HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOE WEINKAUF,

Plaintiff,

v.

VERISTONE MORTGAGE, LLC, et al.,

Defendants.

CASE NO. C16-5471-RBL

ORDER DENYING MOTION FOR TRO

THIS MATTER is before the Court on Plaintiff Weinkauf's Motion for a TRO precluding the scheduled foreclosure sale on his home. Weinkauf obtained an eight month, interest only, $1,047,000 bridge loan from a hard money lender that he sought out on the internet[1]. The loan had egregious, but fully disclosed terms, including a 12% interest rate, a 24% default interest rate, the short term, the interest-only payments, and massive fees, closing costs and reserves—the amount disbursed at closing was only $977,901. Weinkauf variously claims that Veristone "promised it would make him another loan," that it would help him "find another lender" to take out his bridge loan if it could not make the loan itself, or that it would offer him a

[1] Veristone denies that it is a "hard money lender," but concedes it is not your typical residential lender.

traditional loan if he could not find another lender willing to do so. In any event, he made only the first two payments (possibly from the reserves held back at closing) and could not obtain another loan from Veristone or anyone else.

Weinkauf claims generally that he was ‘tricked” into borrowing the money, that the stated monthly income amount ($44,000) was a “misrepresentation”—though he admits he signed it and that that amount is in fact his monthly gross. He also argues that the technical aspects of the closing were not done properly; he did not get his three day rescission notice (or his three day rescission period) and he claims the TILA documents are not consistent with the Good Faith Estimate[2]. He claims violations of TILA, the Homeowner Equity Protection Act, the Washington Deed of Trust Act, its Consumer Protection Act, and the Mortgage Brokers Practices Act. He seeks to enjoin the sale (and possibly to rescind the loan, though there is no indication he has formally done so), and damages.

Veristone argues that Weinkauf has not made the payments required to enjoin the sale under the DTA and has not complied with the DTA’s procedural requirements—perhaps an ironic claim, given the nature of the claims against it—but the Court will address Weinkauf’s claim on the merits.

The purpose of a TRO is “preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing [on the preliminary injunction application], and no longer.” *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423 (1974); *see also Reno Air Racing Ass’n v. McCord*, 452 F.3d 1126, 1130-31 (9th Cir. 2006). To obtain a TRO or a preliminary injunction, the moving party must show: (1) a

---

[2] He complains, for example, that he “APR” was 19.141%, while the “interest rate” was supposed to be 12%. But those numbers do not measure the same thing, and on an interest-only loan with extremely high costs, it is entirely possible that both are accurate.

likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that a balance of equities tips in the favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Traditionally, injunctive relief was also appropriate under an alternative "sliding scale" test. *The Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008). However, the Ninth Circuit overruled this standard in keeping with the Supreme Court's decision in *Winter*. *American Trucking Ass'ns Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (holding that "[t]o the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable").

Veristone argues that Weinkauf cannot meet this standard because, even if he is correct about the details of the DFI's findings of technical violations, he cannot prevail on his theory that Veristone "set him up to fail so that it could take his home." It also points out that the damages he could ever recover for these "foot faults" would be a small offset to the money that he admits he borrowed and failed, almost from the outset, to re-pay. And it argues persuasively that his CPA damage claims would survive the foreclosure in any event.

Weinkauf has almost no chance of success on the merits of his claims, at least any claim that would permit him to retain the home and the money he borrowed to buy it. He has established at best that Veristone (and he) rushed the closing. But he has not established that he was "tricked," that Veristone "misrepresented" his gross monthly income *to him*, or that he was the victim of some scheme to take his home. He went full speed into the worst loan this Court has ever even heard of, and signed numerous disclosures explaining plainly just how bad it was.

Nor has Weinkauf established the other elements required for a TRO. The Motion for a TRO is DENIED.

IT IS SO ORDERED.

Dated this 8th of July, 2016.

Ronald B. Leighton
United States District Judge